IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kyle Rogers, : 
              Petitioner : 
         : No.  1238 C.D. 2016
        v. : 
         : Submitted:  August 4, 2017
Unemployment Compensation : 
Board of Review, : 
              Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED:  September 26, 2017

Kyle Rogers (Claimant) petitions for review of the June 21, 2016, order of the Unemployment Compensation Board of Review (Board) which reversed a referee's decision and denied him benefits under section 402(e) of Pennsylvania's Unemployment Compensation Law (Law).[1]

---

[1] Section 402(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with this work, irrespective of whether or not such work is 'employment' as defined in this act."  43 P.S. §802(e).  The Board did find Claimant able and available to work under section 401(d) of the Law, 43 P.S. §801(d)(1).

**Facts and Procedural History**

Claimant was hired by the City of Wilkes Barre (Employer) as a full-time police officer on February 6, 2014. (Board's Finding of Fact No. 1.)

Employer found Claimant to be in violation of General Order 1.8 of its Code of Conduct, (Certified Record (C.R.) at Item No. 9, Exhibit C-1), on three occasions spanning from March 2015 to October 2015.[2] *Loudermill* hearings were held on each occasion.[3] On March 12, 2015, Employer suspended Claimant for two days for violating sections 4.03, 4.04, 4.07, and 5.07 of the Code of Conduct by arguing with a superior officer. (Board's Finding of Fact No. 2.) On July 7, 2015, Employer issued Claimant a written reprimand for violating sections 1.11, 4.06, and 4.09 of the Code of Conduct after failing to appear at three preliminary hearings. (Board's Finding of Fact No. 3.) On October 16, 2015, Employer again suspended Claimant for two days, finding him to be in violation of section 4.02 of the Code of Conduct because he fell asleep behind the wheel of his patrol car while on duty. (Board's Finding of Fact No. 4)

Employer found Claimant to be in violation of the Code of Conduct for a fourth time after a *Loudermill* hearing on December 28, 2015. (C.R. at Item No. 9.) The violation arose from an incident occurring on December 15, 2015. (Board's Finding of Fact No. 8.) While standing together in a bidding room, two fellow

---

[2] The record reflects that Claimant stipulated to each of these violations before the referee at the March 23, 2016 hearing.

[3] In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the United States Supreme Court held that "an employee with a constitutionally protected property interest in his employment" is entitled to "some form of pretermination hearing" pursuant to the requirements of the Due Process Clause of the United States Constitution. 470 U.S. at 542.

officers joked with Claimant about the possibility of his reassignment to the night shift under the supervision of his former lieutenant. (Board's Finding of Fact No. 9.) In response to the jokes, Claimant raised his firearm and pointed it at the bid board, stating that he would kill himself if he was reassigned to the night shift. (Board's Finding of Fact No. 10.) Claimant acknowledged his inappropriate actions and explained that he neither pointed his gun at his co-workers, nor threatened them in any way. (Board's Finding of Fact No. 11.) Claimant's conduct violated section 5.06 of the Code of Conduct, which prohibits the flagrant misuse, handling, or display of firearms and, by itself, is punishable with a maximum five-day suspension. (Board's Finding of Fact Nos. 12-13.)

On January 8, 2016, Employer terminated Claimant's employment pursuant to section 1.11 of the Code of Conduct, which allows for discharge after "repeated violations of the departmental Code of Conduct, or any other course of intentional misconduct indicating that a member has little or no regard for their [sic] responsibility as a member of the department." (Board's Finding of Fact Nos. 1, 5; C.R. at Item No. 9, Exhibit C-1.)

Claimant filed an initial claim for unemployment compensation benefits on January 10, 2016. (C.R. at Item No. 2.) Following receipt of Employer's separation information, the local service center denied Claimant benefits under both sections 402(e) and 401(d) of the Law. (C.R. at Item No. 5.)

Claimant appealed and the matter was assigned to a referee. At a hearing on March 23, 2016, the referee reversed the decision of the local service center, and granted Claimant unemployment compensation benefits. (C.R. at Item No. 10.) Employer appealed to the Board, which concluded that Claimant was

ineligible for benefits under section 402(e) of the Law.[4] (C.R. at Item No. 17.) Claimant filed a timely appeal to this Court.

On appeal,[5] Claimant argues that: (1) Employer is estopped as a matter of law from contesting liability because (a) the letter dated January 8, 2016, terminating Claimant is not a reasoned decision entitled to the presumption of correctness under the hearsay rules of evidence; (b) the city government violated Claimant's *Loudermill* hearing due process civil rights; and (c) the city government concealed relevant evidence; (2) the Board erred in reversing the referee's decision dated April 1, 2016, because there was no substantial evidence of record to support a finding of willful misconduct; and (3) the Board erred by creating an "absurd result that rewards and encourages a public employer's violation of the employee's civil [] and constitutional rights." (Petitioner's brief at 3.)

## Willful Misconduct

We begin with Claimant's second issue. Section 402(e) of the Law provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with this work, irrespective of whether or not such work is 'employment' as defined in this [Law]." 43 P.S. §802(e). We have defined "willful misconduct" as: "(1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior

---

[4] Claimant requested reconsideration of the Board's decision, but his request was denied. (C.R. at Item Nos. 17, 18.)

[5] On appeal, our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether findings of fact are supported by substantial evidence. *Torres-Bobe v. Unemployment Compensation Board of Review*, 125 A.3d 122, 126 n.3 (Pa. Cmwlth. 2015).

4

which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014). The initial burden is on the employer to demonstrate the existence of a work rule, *Yost v. Unemployment Compensation Board of Review*, 42 A.3d 1158, 1162 (Pa. Cmwlth. 2012), and to establish that the claimant engaged in willful misconduct in violation of that rule. *Johns*, 87 A.3d at 1010. Once the employer meets its burden, the burden then shifts to the claimant to establish that the violation occurred for good cause. *Yost*, 42 A.3d at 1162.

"Whether a claimant's actions constitute willful misconduct is a question of law fully reviewable on appeal." *Johns*, 87 A.3d at 1010. Claimant argues that Employer failed to present competent and credible evidence to sustain its burden of demonstrating that Claimant engaged in willful misconduct.

However, the record contains substantial evidence to support the Board's determination of "willful misconduct." This Court has previously explained that "if [a claimant's] conduct clearly discloses breaches of duties and obligations which are inimical to the employer's best interests, such acts on the part of the employee may constitute willful misconduct." *Loder v. Unemployment Compensation Board of Review*, 296 A.2d 297, 300 (Pa. Cmwlth. 1972). An actual intent to wrong the employer is not necessary. *See Eyring v. Unemployment Compensation Board of Review*, 407 A.2d 86, 87 (Pa. Cmwlth. 1979). Instead, a claimant's "conscious indifference to his duty can support a finding of willful misconduct." *Id.* (internal quotation marks omitted).

The record herein reflects that Claimant was disciplined four times for various violations of Employer's Code of Conduct. On March 12, 2015, Claimant

5

was suspended for two days for arguing with a superior officer. (Board's Finding of Fact No. 2.) Four months later, on July 7, 2015, Claimant received a written reprimand for failing to appear at multiple preliminary hearings. (Board's Finding of Fact No. 3.) On October 16, 2015, Claimant again faced a two-day suspension for sleeping in his patrol car. (Board's Finding of Fact No. 4.) Claimant does not dispute these violations.

The record also demonstrates that Claimant violated section 5.06 of the Code of Conduct in December 2015 when he "removed his loaded firearm from its holster, pointed it at the bid board, and stated, 'If I have to go back to night shift, I would shoot myself.'" (Board's Finding of Fact No. 10.) Claimant's statement in response to the related *Loudermill* notice acknowledges:

> Around 1600 hours, I walked into the room where bidding was being held. Officer Hilpp and Officer Homza were in the room. Officer Hilpp was standing next [to] the window of [the] room or the left of the bid board. Officer Homza was sitting to the right of the bid board on the desk. I was standing directly in front of the bid board about 3 to 4 feet away. Both were talking about bidding. As they were talking, I attempted to make light of my situation by quickly removing my weapon from my holster and pointing it at [the] bid board. At no time did I directly point my weapon at either Officer Hilpp or Homza. I joked that "If I have to go back to night shift, I would have to shoot myself." Both Officer[s] Hilpp and Homza explained that what I did was inappropriate and I agreed. None of the above excuses my actions on December 15, 2015. I am just trying to explain why I did what I did. I know that handling a firearm safely is a serious matter and something that should not be joked with. I realize that my impulsive action [] could have resulted in someone being seriously injured or killed. I apologize for this momentary lapse of judgment and expect there to be consequences.

(C.R. at Item No. 9, Exhibit E-5.)

The Board found Claimant's testimony that he neither pointed his weapon at another officer nor assaulted another officer to be credible. (Board's op. at 3.)

Claimant was ultimately discharged for violation of sections 5.06, 1.11, and 1.19 of the Code of Conduct. (Board's Finding of Fact No. 14.) The Board correctly explained that when a claimant is discharged for numerous reasons, he is not entitled to benefits if only one of those reasons constitutes willful misconduct. *See Glenn v. Unemployment Compensation Board of Review*, 928 A.2d 1169, 1172 (Pa. Cmwlth. 2007) ("[A] claimant who has been discharged for multiple reasons is disqualified from receiving benefits even if only one of those reasons amounts to willful misconduct.").

Here, with four violations of the Code of Conduct by Claimant within a one-year period, the record contains substantial evidence to support the Board's finding of willful misconduct. As such, Employer met its burden of demonstrating the existence of work rules and establishing that Claimant engaged in willful misconduct in violation of those rules. Moreover, we note that Claimant failed to present any evidence to demonstrate that the violations of the Code of Conduct occurred for good cause. Accordingly, we find that the Board did not err in reversing the referee's decision dated April 1, 2016.[6]

---

[6] We find no merit in Claimant's allegation that his termination was due to Employer's personal bias. Such an objection was previously rejected by the referee. (C.R. at Item No. 9.)

**Absurdity of Results**

Claimant also argues that the Board's decision creates an "absurd result" because it "reward[s] injustice by withholding and sandbagging gamesmanship," "supplants additional federal employment law civil rights," and fosters "piecemeal determinations." (Claimant's brief at 60-62.) The facts asserted in support of this argument are not clear. Claimant seems to rely heavily upon inapplicable doctrines and case law, including authority related to the spoliation of evidence and the Workers' Compensation Act (Act).[7] This reliance is misplaced.

In his brief, Claimant alleges that Employer withheld documents and failed to produce relevant documents throughout the course of this proceeding; however, the record is devoid of any evidence to support such allegations. (Claimant's brief at 60.) To support his argument, Claimant cites two decisions of our Supreme Court: *McHugh v. McHugh*, 40 A. 410 (Pa. 1898), and *Petrone v. Moffat Coal Co.*, 233 A.2d 891 (Pa. 1967). Neither is applicable to the matter at hand. While the *McHugh* case does stand for the proposition that, where evidence which is within the control of the party in whose interest it would naturally be to produce it, and, without satisfactory reasons he fails to do so, the jury may draw an inference that it would be unfavorable to him, *Petrone* considers "whether a claimant for compensation [under the Act] is entitled to benefits under the heading of total disability if the only work he can perform is light work of a general nature, when no evidence has been presented that light work, considering the worker's physical disability, his limited education and vocational background, is available." *Petrone*, 233 A.2d at 892.

---

[7] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

8

With respect to his allegation that his discharge "supplants additional federal employment law civil rights," Claimant argues that he "did not receive his Pennsylvania Workers' Compensation Act's work-related injury relevant state law's triggered and mandated disability investigation public policy decision-making notices." (Claimant's brief at 61.) We find this argument to be meritless, as the facts of this case do not in any way implicate the Act and Claimant's rights thereunder.[8] Though Employer expressed concern regarding the mental state of Claimant, suggesting that a mental health examination be conducted (C.R. at Item No. 9, Exhibit C-1), Claimant was not diagnosed with a work-related injury that would entitle him to benefits under the Act.

Finally, Claimant argues that the Board's decision "fosters piecemeal determinations." (Claimant's brief at 61.) He alleges that "the complete lack of transparency by [] Employer has caused unnecessary piecemeal controversies and a drain on judicial resources contrary to Pennsylvania's public policy law." (Claimant's brief at 62.) However, Claimant fails to cite, and the Court is not aware of, any other litigation or active proceedings pending between Claimant and Employer. We cannot fathom how the progression of this matter through the appropriate processes afforded under the Law constitutes "piecemeal controversies" or a "drain on judicial resources."

---

[8] Claimant appears to contend that a work-related injury occurred on December 15, 2015. For example, Claimant avers that his written statement dated December 28, 2015, put Employer on notice and triggered his substantive rights under the protections of the Act. (Claimant's brief at 11.) However, we find no evidence of record to indicate that a claim was filed under the Act.

**Estoppel**

Claimant's final argument contends that Employer is estopped as a matter of law from contesting liability because: (a) the letter dated January 8, 2016, terminating Claimant was not a reasoned decision entitled to the presumption of correctness under the hearsay rules of evidence; (b) the city government violated Claimant's *Loudermill* hearing due process civil rights; and (c) the city government concealed relevant evidence.[9] Claimant essentially argues that Employer did not have just cause to terminate Claimant, but did so for biased reasons. We find this argument to be without merit. The issue currently before us "is not whether [Employer] had the right to discharge for the questioned conduct of [Claimant], but rather whether the State is justified in reinforcing that decision by denying benefits under this [Law] for the complained of conduct." *Frumento v. Unemployment Compensation Board of Review*, 351 A.2d 631, 634 (Pa. 1976) (footnote omitted). In other words, we are not in the position to consider whether Employer's termination of Claimant was invalid or violated any agreement between the parties. Regardless, we will briefly address Claimant's arguments.

First, with respect to estoppel as a matter of law, Claimant fails to state facts sufficient to satisfy each of the required elements to support application of the doctrine of estoppel.[10]

---

[9] We addressed this argument earlier in this decision, determining that no evidence of record exists to suggest that Employer improperly withheld evidence from Claimant. *See supra* p. 8.

[10] In *J.S. v. Bethlehem Area Sch. Dist.*, 794 A.2d 936, 939 (Pa. Cmwlth. 2002), we held:

> [C]ollateral estoppel bars a subsequent lawsuit where (1) an issue decided in a prior action is identical to one presented in a later action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action, and (4),

**(Footnote continued on next page…)**

Again, Claimant's heavy reliance on the Act and related case law is misplaced. As we explained above, such an analysis is inapplicable in Claimant's case because the violations leading to his discharge, and the ultimate denial of unemployment benefits, did not involve either a workers' compensation disability or benefits awarded under the Act.

Finally, Claimant contends that he was denied his constitutional due process rights with respect to his *Loudermill* hearings. In *Yost*, this Court previously explained:

> Whether Employer provided Claimant with an adequate *Loudermill* hearing was not for the Board to decide. The General Assembly established the unemployment compensation system "for the benefit of persons unemployed through no fault of their own." Section 3 of the Law, 43 P.S. §752. In following that mandate the unemployment compensation system is designed to provide benefits to workers who become unemployed through no fault of their own. The General Assembly did not include in the Law any provisions for the Board to review whether a government worker was afforded procedural due process before he was fired.

*Yost*, 42 A.3d at 1162. The issue before us is limited to whether Claimant is entitled to benefits under the Law. Because we are not considering the validity of Claimant's discharge, rather only his entitlement to unemployment compensation benefits, Claimant's due process argument regarding his *Loudermill* hearings must fail.

---

**(continued…)**

the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

11

**Conclusion**

Because substantial evidence supports the Board's decision concluding that Claimant's pattern of conduct reflected a conscious indifference to his duty to Employer, and Claimant has failed to establish good cause for his multiple violations of Employer's Code of Conduct, the Board did not err in reversing the referee's decision and holding that Claimant was ineligible for benefits under section 402(e) of the Law.

Accordingly, the Board's decision is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Cosgrove did not participate in this decision.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kyle Rogers,                          :
              Petitioner          :
                                  :   No.  1238 C.D. 2016
           v.               :
                                  :
Unemployment Compensation             :
Board of Review,                      :
              Respondent          :

## *ORDER*

AND NOW, this 26th day of September, 2017, the order of the Unemployment Compensation Board of Review dated June 21, 2016, is hereby affirmed.

_____<br>
PATRICIA A. McCULLOUGH, Judge